May it please the Court. Good morning, Your Honors. Christopher Burke and Scott Morrison for the appellant. I'd like to reserve three minutes for rebuttal. Okay, it counts down. We'll hopefully help you keep track. First, I want to address the Court's concern about standing. Then I want to go into the three reasons why the District Court erred in granting summary judgment and allowing NationStar to engage in sneaky pulls on a quarterly basis against Ms. Vanamann after her Supreme Court has said to determine standing, we look at history and the judgment of Congress. Here, what we have is both a history of these types of lawsuits, invasions of privacy, intrusion upon seclusion, and though Ms. Vanamann's suit is not directly on point, they are invading her privacy looking at her credit report without a permissible purpose, at least that's the allegation. So we do have a history. We also have... You might correct that no concrete injury to her is pleaded. We can get to concrete injury because the allegation is exactly one of the reasons and purposes why the Fair Credit Reporting Act was enacted was just for such a reason, to limit somebody's access to their credit to a permissible purpose. And here, what I'm asking about is not the whether this case is like or distinguishable from one where somebody doesn't get an apartment they want or a job they want or something concrete like that on account of an unauthorized look at a credit report. I think that is the concrete de facto injury. It's hard to quantify and measure, but the fact that Congress enacted a statute that says you need a permissible purpose and we're alleging they had no permissible purpose, along with the historical lawsuits on invasion of privacy, I believe we get to the point of saying we have a concrete de facto injury in this case. In your view, the invasion of privacy is itself the injury? Yes. Yeah, that's always a tricky question and I'm afraid the Supreme Court has not educated me very well in Spokio, but there we are. But I think we can also look at the Van Patten case and it said in essence if the statute in question is violated or the purpose of the statute that we reach concreteness and that's what we have here. At least one of the points of the Fair Credit Reporting Act is not to allow somebody unlimited access and that's what we had here. Help me on the soft peaks as they call them, or soft pulls I think they call them. When they made their soft pulls, was she still in possession of the property? No. And Judge, to clarify, I call them sneaky pulls. Either way, they've got the more euphemistic and you've got the stronger language, but pulls. Right. When they looked at her Yes. And she had received her discharge. There was one just, her discharge was May of 2013. They did look at the end of January 2013. Everything else was 2014 and 2015. After she had moved out, discharged it, and had no relationship with Nation Star, and didn't even know who Nation Star was. Well, it was very common that the... She had an account though. It was still open. A mortgage account. It depends on how you define account. She didn't have a credit account. She may have had an in-rent account for Nation Star within its own sphere of keeping track of properties and said, okay this property is associated with this account, but she didn't have a credit account with him. And that's one of the three reasons why the district court erred. First, there was no credit transaction involving the parties. And why I say that is, when we look at the definition of credit in consumer protection statutes, it's the deferral of a right to a payment. She had dish... of a debt. She had discharged that debt. So there was no credit. If there's no credit, there's no credit transaction. Further, it was not involving Ms. Vandeman. If we look at Pintos and Andrews, she had no connection to Nation Star. Her original mortgage 15 years ago was not with Nation Star. She didn't know who Nation Star was. She didn't reaffirm her debt. She wasn't looking for credit. She was not involved with Nation Star. They pulled her in. And... Well, but it's very common for someone who owns property, who has a mortgage, not to have any idea who the servicer is. I mean, these things you get transferred all the time. Correct. So I don't know that that's relevant. That she doesn't know who somebody being offended that their credits looked at by somebody, who is this person? Why are they looking at my credit? That's the offense there. But there's no credit because there was no debt. There's no credit transaction. She wasn't involved. She was pulled in. That she had signed a loan 15 years ago only tangentially gets her involved in this case. And if there's no credit transaction, Pinto says you need both a credit transaction and an account to review. There's no credit transaction. We never even get to account review. Here there's no account to review. Going back to what you asked, Judge Fischer, Nation Star may have had an account internally. Ms. Vanneman had no account with them. There was no reason to look at her credit. She didn't owe them. She wasn't seeking an extension of credit. She wasn't seeking to modify her loan. She had nothing to do with Nation Star that they would need to look at her credit. Yet when we look at the declaration of Ms. DeLull, they said there's a hundred and fifty different credit aspects we can determine by these sneaky polls. And with no basis to even look at her credit because she no longer had a relationship with them, there was no account to review on that end. There was no in-personam account, I should say. They may have had an in-rem account, but not an in-personam account. And finally, there was no business purpose. This was a consumer loan, a consumer debt on a mortgage. So that doesn't get Nation Star... I can see where there'd be a business purpose. I don't know if it's one that would give standing or whether it would violate the act, but I can see why a company would like to look at what it's been doing in the past to see if it's a good procedure. For example, is it better to foreclose on these people who are taking bankruptcy as soon as we can or is it better to hold off and see if we can work something out with them? And here's the problem with that, Judge, if I may. Once there's a discharge, you cannot even modify a loan. People do it. The reason is you have the 60 days after the bankruptcy is filed to reaffirm a debt. Anything after that between the debtor and creditor is an illegal reaffirmation agreement. This is all true, what you're saying. I know you're correct, but what I'm thinking is suppose a person's been paying their mortgage, everything's fine, they run up a huge medical debt, they go bankrupt in order to get out from under it, and after it's all over, the lender would still be happier just working out a new deal with them, new mortgage, and keeping them in their house because getting a whole bunch of deteriorating foreclosed on houses is worse for the creditor than getting more money later. Well, that's a business purpose maybe for Nation Star. That's what I mean. But it's a consumer purpose for Ms. Vanneman, and the fact that Nation Star would rather sit on a property for six years with nobody living there, no payments, and never foreclosing, and instead look at her credit on a quarterly basis is really a jury question as to why they would do that. Having said that, if there's no other questions, I'd like to... Yeah, why don't you save the time, and then you'll have a chance to respond. Thank you. May it please the Court, John Lynch for Nation Star Mortgage. I'd like to address the standing issue since you asked about that first. There is no concrete injury at all to Ms. Vanneman, at all. So I believe the question, no allegation of emotional distress, no financial harm, nothing. We went through discovery. A lot of these cases are decided right at the motion-to-dismiss stage. This case went all the way through summary judgment. No, all we have here is a procedural violation, alleged, which we dispute. Obviously, we prevailed on summary judgment, but just for standing purposes to argue it, a procedural technical violation. They claim we had consent for the soft pulls prior to the bankruptcy discharge, and then after the discharge, they believe there's no consent. I'd like to get away from sneaky pulls and soft pulls and talk about looking at her credit report, so that it's concrete. Now, let me ask you a question here. I can see why you'd want to look at her credit report while she's still undischarged, and I can see why you'd want to look at her credit report when she's still in the house. But once the house is foreclosed on and she's charged, she doesn't owe you any money, and she doesn't have any title or any other interest in the house, and I can't see what justification there is for looking at her credit report. When you say you have an account open in your brief, it looks meaningless because you're not going to get any money from her. You're not going to pay any money to her. It looks like it's kind of like, when do you discharge or when do you shred a dead file? I don't see what it means, so why look at her credit report at that point? Okay, and first of all, they do it as a business practice until the account is closed. The account cannot be closed. What do you mean account closed? It sounds like you're just talking about a company that doesn't, on its own books, close the account, but she doesn't owe any money on the account. You haven't asked that. When she signed up for the credit transaction, Judge, she signed up for an in personam liability, an in rem. She doesn't have either one. She's still. Once she's foreclosed on. Well, she wasn't ever foreclosed upon. Did they foreclose on the property? No, sir, Judge. No, sir. They thought they foreclosed on the house. They never. What happened is she went through the bankruptcy, and the lien remained post-bankruptcy, and the lien creates the account. Oh, there was no foreclosure? No foreclosure ever. So the lien remained? Even as far as we know, even as today. It would just be like someone not living in their house, but there's still being a lien, and they filed bankruptcy. You still have an account once you have a lien. You've got to have the foreclosure or the deed in lieu or cash for keys or something to be able to total up the account to send the final tax forms. I thought the lien was gone because the house had been foreclosed upon. No, Judge. The lien, and it's in Judge Dawson's opinion, and it's undisputed in the case. The house has never been foreclosed upon. What happened, Judge, is the house was sold subject to the liens. So it was sold at a trustee sale subject to the liens, and that's the reason, Judge, if there was no lien on the property, we could close out the account with a dollar figure, send her the final 1098 forms, and there would be no account. But just because someone has their bankruptcy discharge, if until the lien is liquidated, the account's still open because she may want to move back in the house, and you have to be able to liquidate it to see what the loss is on the final tax forms. So the business practice of doing this post-discharge is during the mortgage crisis, people would file bankruptcy, but the lien would never be removed. And there was such a glut of bankruptcies through the system that until there was an actual foreclosure or deed in lieu or something like that that, you know, liquidated the lien, you had to wait until the lien was liquidated to close the account. Were any of these so-called pulls executed after the property was sold? Yes, Judge. So why was that? So she's gone now, right? I mean, the property may be subject to a lien, but she's no longer the property owner. Yes, but there's still a lien on the property, and you still have to be at a contactor to be able to see what, how we're going to handle the lien on the property. But it's a lien on her property that she no longer owns. She no longer owns, but the lien's in her name. What does it matter? I mean, the lien is on the physical property rather than on her. But the deed of trust is in her name. You have to have, when you have a lien and it's in your name, you have to be able to have contact with the borrower because it's in their name. I don't get that. I mean, who's obligated under the lien? Certainly not she. Well, she's not personally obligated, but her in-rim rights in that property are. Her name's still on that mortgage or deed of trust. I don't understand what you say when you say her in-rim rights on the property are. She had no in-rim. She had no rights on the property. She sold the property. She did not sell the property, Judge. Well, I should say the property was sold, right? The trustee's sale. So the property was sold. You now have a new title owner. There's a lien against the property based on this earlier mortgage. She does not own the property. She owes no money on it, yet you're still doing credit reports on her. I mean, let me talk about soft pulls. Soft pull is getting attributes from a credit report. It's not visible to third parties at all. Yes, I know all of that. It Please, would you just let me talk for a moment? So she no longer owns the property. There's a lien on the property, but she owes nothing on it, and you're nonetheless doing these soft pulls. I don't get why you're wanting to do that. Because you can't liquidate the account as to her and send her the final tax forms until the lien is extinguished. But the lien is owned by the owner of the lien, which is the loan servicer or the lender. She has no interest in the lien, and she has no interest in the property. So it seems like it's entirely up to the bank whether they find it more advantageous to keep an account open that's pretty much meaningless. And as for the proposition that you have to keep it open in order to deal with her at some point, you really don't as far as I know. The person that buys it from the bankruptcy trustee says it's subject to liens. That new owner doesn't have any rights in the lien. The only person that has rights to the lien is Ms. Vanneman. Owners don't have rights in liens. What a lien is, is a right in the lender, not the owner. Correct, but the obligor and the holder of that lien, the party that has the interest in that lien besides NationStar as the servicer, is Mrs. Vanneman, not the buyer. But she has no interest. If the bank were ever to call her up and say, hey, we found a buyer for your old house. We'd like to talk with you about the lien. She can just say, look, I don't know any money. I don't own the house. I'm out of here. Don't bother me. You can't close the account until you send the final tax forms, and you have to liquidate the lien for her tax implications under the 1099 and the 1098. You have to liquidate the lien. You have to keep the account open. But it's entirely up to the bank whether to do that or not. That's a point, but the borrower also could keep calling you and do some sort of exchange then of the lien rights. Who would exchange what? It would be a relinquishment of the lien. You mean you'd pay her money to, well, no, you can't. You own the lien. We own the lien, and that would be an obligor on the lien. So there'd be no reason for her to pay you to discharge the lien. That's correct. And what was happening. No reason for you to pay her to do anything. What was the interest? Is there any reason that the loan servicer would pay her for some kind of paperwork on the lien? There may be. If she wanted to finalize her tax forms, there could be. And there's instances, Judge, too, where the borrower would stay in the property, and the new owner would actually lease to the Mrs. There's no evidence of that, Judge, either way. The evidence, there's no depositions of Mrs. Vanneman. They never took the deposition. All we exchanged was written discovery. And Judge, I guess going back to. Well, they wouldn't take a deposition of Mrs. Vanneman. Nation Star would. Correct, but they would presumably want to take the deposition of Nation Star, and they didn't do it. Why? If they wanted to, to dispute the information. Why should she spend money on a property she no longer owns? Why should she be put to any expense? I can understand that. I can understand that, Judge. And I guess what we're saying is when you look at the statute, when you just looked at the willfulness analogy, and you look at the statute, and we didn't deem the account to be closed, our interpretation of the statute was correct. Since we still had a lien on the property, we believe our interpretation of the Fair Credit Reporting Act statute was correct. There was no guidance from the FTC. The only court of appeals case is the Levine case from the 11th Circuit, and they said there was no account. You could even still do pulls after an account was closed. In this situation, it's reasonable for us not to deem our account to be closed until the liens were moved. So we've got two questions here. The first one is, what's the law require? And the second one is, if they're going to get damages out of you, statutory damages, they've got to sue for willfulness. So it may be that you're wrong, but you've got to be, I'll say in a lay sense, you've got to be really wrong. They only sued for willfulness. I understand that. So I'm just saying that in order to recover damages against you, you've got not merely to be wrong, but really wrong. Yeah. So you may be wrong. I may be wrong, Judge, but our interpretation of the statute and the lack of guidance in courts around the country, both district and circuit, have said this statute is not clear. I still don't understand why you're preserving the lien. Can you give it to me more concretely? Because, Judge, until the lien is liquidated, you don't know what the loss is. But you can liquidate it any time. We could, but we hadn't. I mean, until you foreclose, you don't know what the loss is on the property. You don't have any idea. If you foreclose on it and you resell it, you don't know what the loss is on it. Ordinarily, you do a nonjudicial foreclosure, which eliminates the lien. That's how you sell the house. And what you do sometimes during the bankruptcy, a motion lifts a stay for the foreclosure. That's right. And then other times during this time period, people would get discharged and the lien would just remain, and you would try to keep contact with the foreclosure if they wanted to stay in the property. So are you just waiting to see whether the property value will recover so the lien's worth more? Is that what's going on? No, sir, Judge. There's no evidence of that at all. What you're trying to... Well, I'm not sure that's the wrong thing to do. Meaning, you know, if the house is underwater, you might want to wait for the property market to recover. And NationStar wants to have performing mortgages as a servicer. And they did wait after a certain time period based on the mortgage crisis, and they weren't rushing to foreclose. Their intent and their business reasons for doing that are not in the record, and I don't know what they were. Okay. And... I'm just trying to imagine what they could be. And the best I can come up with is the same one that Judge Fletcher just came up with. Well, I think what they do is they wait and they hope that the borrower recovers financially, that they can modify a loan or do a new loan and keep people in their houses. Because they don't want to during that time period, and still even today, the glut of real estate-owned properties is so high. I'd like to address the standing one more time, and I think, Judge, you were right. This is a bare allegation of invasion of privacy. Yeah, no, I think we've got the standing stuff under control. Okay. Thank you. Thank you. Yeah, we took you over time, which is why I'm saying we've got that under control. Okay. You may disagree with us, but there we are. Thank you. Okay. Thank you, Your Honor. Just a couple of points. You don't... Now, you said that she was no longer in the house. We heard from the other side that we don't know. She's my client. She hasn't been in the house in six years. I did her bankruptcy. When we converted from Chapter 13 to 7 back in 2012, the reason why she gave up the house, that was the only reason she filed 13, was to try to keep it. So at the end of 2012, she moved out. We converted to Chapter 7. She hasn't been back since. Okay. But is it in the record? I understand that you're representing this just because she's your client, but is that in the record? It may just be as an argument in a pleading. I'm not sure it makes much difference, but okay. I'll let it go. Okay. Thank you. You don't need to pull somebody's credit to send them tax forms or documents. There's other ways to get somebody's address. The key point for me is not whether they're wrong as a matter of law. I'm inclined to think they are. The key question is, of course, was it willful? Why, in your view, is it willful? Because PITDOS came out in 2010, and it said you need both a credit transaction involving the debtor and an account review. So by 2010, in the Ninth Circuit anyway, we knew you had to have a credit transaction. And again, credit is the deferral of payment on a debt. Once Ms. Vandeman discharged it early in 2013, there was no credit, and so there could be no credit transaction. We also know from Andrews and PITDOS, Andrews from 2000, that you have to be involved. She wasn't involved. They pulled her in after the fact. I think the tax report may bear on a capital gain for her. If there's, as I recall from that period, when there was a foreclosure on somebody's house, then they had income to the extent that the loan was forgiven. Except under Section 108, the discharge of debt is not taxable. So the bankruptcy discharge, she wouldn't have capital gain. So she wouldn't. So the discharge of the lien would be meaningless. Right. She discharged the debt. Whatever happens to property after that, she's not affected. Would there be any tax significance whatsoever to their discharging the lien? Not to her. There may be a statute that says send the form, but the point is, you don't need to pull her credit to send the form. And that's what they're trying to say. We have to do all this stuff, so we need to pull her credit. The two are mutually exclusive. You don't need her credit report to pull it. Okay. Good. Thank you. Thank you very much. Thank both sides for their arguments. Vandermond v. Nation Star Mortgage submitted for decision. Your Honor, I have something in the record that did have a change of address on Ms. Vandermond. That's okay. Don't worry about it. Thank you. The next case on the calendar this morning, Turner v. Smith.
judges: Kleinfeld, W. Fletcher, Fisher